Slip Op. 20-54

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JINDAL POLY FILMS LIMITED OF INDIA, | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | Before: Claire R. Kelly, Judge |
| Defendant, | Court No. 19-00050 |
| and | |
| DUPONT TEIJIN FILMS ET AL., | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Sustaining Commerce's final determination in its 2016 administrative review of the countervailing duty order on polyethylene terephthalate film, sheet, and strip from India.]

Dated: April 22, 2020

Lizbeth R. Levinson, Ronald M. Wisla, and Brittney R. Powell, Fox Rothschild LLP, of Washington, D.C., for plaintiff Jindal Poly Films Limited of India.

Joseph H. Hunt, Assistant Attorney General, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the brief were Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and Sonia M. Orfield, Trial Attorney. Of counsel on the brief was Michele D. Lynch, Assistant Chief Counsel, Office of the Chief Counsel for Enforcement and Compliance, U.S. Department of Commerce.

Patrick J. McLain, Sarah S. Sprinkle, and Stephanie E. Hartmann, Wilmer, Cutler, Pickering, Hale and Dorr, LLP, of Washington, D.C., for defendant-intervenors DuPont Teijin Films, Mitsubishi Polyester Film, Inc. and SKC, Inc.

Kelly, Judge: This action is before the court on motion for judgment on the agency record. See Pl.'s 56.2 Mot. J. Agency Rec., Oct. 1, 2019, ECF No. 38. Plaintiff Jindal Poly Films Limited of India ("Jindal"), a foreign producer and exporter of polyethylene terephthalate ("PET") film, sheet, and strip, challenge various aspects of the U.S. Department of Commerce's ("Department" or "Commerce") final determination in its administrative review of the countervailing duty ("CVD") order on PET film, covering the period of review January 1, 2016 to December 31, 2016 ("POR"). See [PET] Film, Sheet, and Strip from India, 84 Fed. Reg. 10,789 (Dep't Commerce Mar. 22, 2019) (final results of [CVD] admin. review; 2016) ("Final Results"), and accompanying Issues and Decision Memo. for the [Final Results], C-533-825, (Mar. 19, 2019), ECF No. 26-5.

Jindal challenges four aspects of Commerce's determination as unsupported by substantial evidence and not in accordance with law. See Pl.'s Memo. of Points and Authorities Supp. Pl.'s 56.2 Mot. J. Agency Rec. at 2, Oct. 1, 2019, ECF No. 38-2 ("Pl.'s Br."). First, Jindal contends that Commerce erroneously included benefits received on both subject and non-subject merchandise in its calculation of countervailable benefits under the Government of India's ("GOI") Merchandise Exports from India Scheme ("MEIS"). Id. at 2, 6–8. Second, Jindal argues that Commerce failed to determine whether the State Government of Maharashtra's

("SGOM") Package Scheme of Incentives ("PSI") constitutes a subsidy to a disadvantaged region. Id. at 2, 8–13. Third, Jindal alleges that Commerce should not have determined that certain capital investment deductions, under subsection 32AC(1A) of Section 32 Capital Investment Deductions of India's Income Tax Act of 1961 ("Subsection 32AC program"), were specific based on adverse facts available, when Jindal had provided sufficient information during the review to demonstrate that the deduction is not specific. Id. at 2, 13–17. Fourth, Jindal avers that because it had purchased goods from suppliers exempt from the requirement of collecting taxes under state laws ("state tax incentive programs"), Commerce erred in determining that these programs provided a benefit to Jindal. Id. at 2, 17–18. For the reasons set forth below, the court sustains Commerce's Final Results in its entirety.

## BACKGROUND

On September 13, 2017, Commerce initiated an administrative review of the CVD order on PET film from India. See Initiation of Antidumping and [CVD] Admin. Reviews, 82 Fed. Reg. 42,974, 42,982 (Dep't Commerce Sept. 13, 2017). Subsequently, on August 10, 2018, Commerce issued the preliminary results of its administrative review. See [PET] Film, Sheet and Strip from India, 83 Fed. Reg. 39,677 (Dep't Commerce Aug. 10, 2018) (prelim. results and partial rescission of [CVD] admin.

Court No. 19-00050                                                                                              Page 4

review) ("Prelim. Results"), and accompanying Decision Memo. for the [Prelim. Results], PD 93, bar code 3739891-02 (Aug. 3, 2018) ("Prelim. Decision Memo.").[1]

Relevant here, in the preliminary results, Commerce determined that three programs of the GOI—the MEIS, PSI, and state sales tax programs—provided countervailable subsidies. Prelim. Decision Memo. at 20, 24–27. With respect to the MEIS program, in which the GOI issues a duty scrip to exporters to be applied to the payment of future customs duties or transferred to another company, Commerce calculated Jindal's rate by dividing benefits received by total export sales during the POR. Id. at 6, 20. Commerce also preliminarily countervailed the PSI program that provides incentives to encourage economic development within the State of Maharashtra, id. at 24, as well as state tax incentive programs, which allow selected industries in certain regions to sell goods without charging or collecting sales taxes, id. at 26–27. However, Commerce required further information to determine whether the Subsection 32AC program was countervailable. Id. at 28.

On February 25, 2019, Commerce issued a post-preliminary analysis memorandum, where it found that the GOI had withheld requested information concerning, inter alia, the Subsection 32AC program and, as a result, applied adverse

---

[1] On June 26, 2019, Defendant filed indices to the public and confidential administrative records underlying Commerce's final determination, on the docket, at ECF No. 26-2–3. Citations to administrative record documents in this opinion are to the numbers Commerce assigned to such documents in the indices.

facts available ("AFA")[2] to determine de facto specificity.  See Post-Prelim. Analysis Memo. at 3–6, 9–10, PD 136, bar code 3797273-01 (Feb. 25, 2019).

## JURISDICTION AND STANDARD OF REVIEW

The court exercises jurisdiction pursuant to section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a (2012),[3] and 28 U.S.C. § 1581(c) (2012), which grant the Court authority to review final determinations in a CVD administrative review.  "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

---

[2] Parties and Commerce sometimes use the shorthand "adverse facts available" or "AFA" to refer to Commerce's reliance on facts otherwise available with an adverse inference to reach a final determination.  However, AFA encompasses a two-part inquiry pursuant to which Commerce must first identify why it needs to rely on facts otherwise available, and second, explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting among the facts otherwise available."  See 19 U.S.C. § 1677e(a)–(b).  The phrase "total adverse inferences" or "total AFA" encompasses a series of steps that Commerce takes to reach the conclusion that all of a party's reported information is unreliable or unusable and that as a result of a party's failure to cooperate to the best of its ability, it must use an adverse inference in selecting among the facts otherwise available.

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.  Citations to 19 U.S.C. § 1677e, however, are to the unofficial U.S. Code Annotated 2018 edition, which reflects the amendments made to 19 U.S.C. § 1677e by the Trade Preferences Extension Act of 2015 ("TPEA").  See Trade Preferences Extension Act of 2015, Pub. L. No. 114-27, 129 Stat. 362 (2015).

## DISCUSSION

**I.     Commerce's Calculation of Benefit Under the MEIS Program**

Jindal alleges that Commerce erroneously calculated benefit from the MEIS program based on benefits received on sales of both subject and non-subject merchandise. Pl.'s Br. at 6–8; see also Pl.'s Reply Br. at 6–7, Jan. 17, 2020, ECF No. 45 ("Pl.'s Reply Br."). Instead, according to Jindal, Commerce should have calculated benefits received only in connection with subject merchandise. Pl.'s Br. at 7–8. Defendant and Defendant-Intervenors counter that Commerce's reasonably calculated benefit, because benefits under the MEIS program were not tied to subject merchandise. Def.'s Br. at 7–9; Def.-Intervenors' Br. at 5–6. For the reasons that follow, Commerce's reasonably calculated benefit under the MEIS program.

Generally, Commerce's subsidy attribution depends upon the type of subsidy and whether it is tied to a particular market or product. 19 C.F.R. § 351.525 (2018). However, if a firm produces more than one product, Commerce will attribute the subsidy only to sales of a particular product if the subsidy is tied to the production or sale of only that product. See id. at § 351.525(b)(5).[4] Neither the statute nor Commerce's regulation defines when a subsidy is tied to the production or sale of a particular product. See 19 U.S.C. § 1677(5)(E)(iv); 19 C.F.R. §§ 351.525(b)(2), (b)(5). Commerce, as a matter of practice, determines whether a subsidy is tied by

---

[4] Likewise, if a subsidy is an export subsidy Commerce will attribute it to only exports. See id. at § 351.525(b)(5).

Court No. 19-00050 Page 7

evaluating the purpose of the subsidy based on information available at the time of bestowal; Commerce does not trace how the subsidy is actually used by recipients. See Final Decision Memo. at 19; see also Large Residential Washers From the Republic of Korea, 77 Fed. Reg. 75,975 (Dep't Commerce Dec. 26, 2012) (final affirmative [CVD] determination), and accompanying Issues and Decision Memo. for the Final Determination in the [CVD] Investigation of Large Residential Washers from the Republic of Korea at 41, C-580-869, (Dec. 18, 2012), available at https://enforcement.trade.gov/frn/summary/korea-south/2012-31078-1.pdf (last visited Apr. 14, 2020)).

Here, Commerce reasonably attributes the amount of benefit from the MEIS program to all of Jindal's export sales of subject and non-subject merchandise. Under the MEIS program, the GOI issues a duty scrip, or credit, to licensed exporters that can be applied to the payment of future customs duties or transferred to another company. See Prelim. Decision Memo. at 18. Because the actual scrip amount, i.e., the amount of benefit, is not known until export sales are made,[5] Commerce considers the date that the GOI issued the MEIS license to be the date of bestowal. See Prelim.

---

[5] Under the MEIS program, an eligible exporter files an application, with supporting documentation and up to 50 shipping bills, to obtain an MEIS license. See Prelim. Decision Memo. at 19. The GOI issues a duty scrip worth one, three, or five percent of the lesser of either the FOB value of exports in free foreign exchange or the FOB value in the shipping bills in free foreign exchange. Id. (citing Jindal Poly Questionnaire Resp. at 94–97, CD 9, barcode 3660266-01 (Jan. 10, 2018)). After receiving and registering a scrip, the recipient may freely transfer it to another company or apply it to payment of future customs duties. Id.

Decision Memo. at 20; Final Decision Memo. at 19; see also Countervailing Duties, 63 Fed. Reg. 65,348, 65,403 (Dep't Commerce Nov. 25, 1998) (explanation of final rules). The MEIS license does not restrict the merchandise to which an exporter could apply the scrip. See Final Decision Memo. at 19. Therefore, at the point of bestowal, the amount foregone by the GOI was the value of the MEIS license, regardless of the fact that the license was later used for subject and non-subject merchandise. Id. Even though Jindal could identify which scrips were used for export sales of subject merchandise, see Jindal Poly Initial Questionnaire Resp. at Exs. 91–92, CD 48–49, bar codes 3660266-40–41 (Jan. 10, 2018), and of non-subject merchandise, see Jindal Poly Second Supp. Questionnaire Resp. at Exs. 115–116, CD 82, bar code 3735042-01 (July 25, 2018), Commerce's practice is not to post hoc "trace the use of subsidies" through records. See Countervailing Duties, 63 Fed. Reg. at 65,403; cf. Royal Thai Gov't v. United States, 30 CIT 1072, 1085, 441 F. Supp. 2d 1350, 1363–64 (2006). Therefore, Commerce did not err in determining that the GOI provided a subsidy not tied to the production or sale of a particular product and reasonably calculated Jindal's CVD rate based on benefits received for both subject and non-subject merchandise.

**II. Commerce's Application of AFA to Determine De Facto Specificity of the Subsection 32AC program**

Jindal argues that Commerce's application of AFA to find the Subsection 32AC program de facto specific is unsupported by substantial evidence and contrary to law. See Pl.'s Br. at 13–17; see also Pl.'s Reply Br. at 4–6. Further, according to Jindal,

Commerce's reliance on AFA "penalize[s]" Jindal for the GOI's failure to cooperate. See Pl.'s Br. at 16; see also Pl.'s Reply Br. at 5–6. Defendant and Defendant-Intervenors respond that Commerce appropriately relied on AFA and argue Jindal's suggestion that the application of AFA punishes Jindal is misplaced. See Def.'s Br. at 15–19; Def.-Intervenors' Br. at 7–10. For the reasons that follow, Commerce's use of facts available with an adverse inference is supported by substantial evidence and in accordance with law.

Commerce has discretion to use facts otherwise available to make determinations where, inter alia, "necessary information is not available on the record" or a party "withholds information that has been requested by [Commerce] . . . , fails to provide such information by the deadlines for submission of the information or in the form and manner requested . . . , [or] significantly impedes a proceeding[.]" 19 U.S.C. § 1677e(a). If Commerce additionally "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information . . . , [Commerce], in reaching the applicable determination . . . , may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available" to fill the factual gaps in the record. Id. at § 1677e(b)(1); see also Nan Ya Plastics Corp., Ltd. v. United States, 810 F.3d 1333, 1338 (Fed. Cir. 2019). A respondent cooperates to the "best of its ability" when it "has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed.

Cir. 2003). Notwithstanding Commerce's discretion to employ AFA in certain situations, Commerce's AFA determination must be supported by substantial evidence. See 19 U.S.C. § 1516a(b)(1)(B)(i).

Commerce reasonably applied facts otherwise available because it found that necessary information was not on the record for it to determine whether the Subsection 32AC program was specific within the meaning of 19 U.S.C. § 1677(5A). In its initial questionnaire, Commerce requested the GOI to coordinate with respondent companies and report any other subsidy programs, not specifically examined, used by these companies. See Letter from [Commerce] to Embassy of India Pertaining to GOI/Jindal/SRF Questionnaire at II-18, PD 21, bar code 3645037-01 (Nov. 27, 2017). Although both mandatory respondents Jindal and SRF reported participating in the Subsection 32AC program, the GOI stated that it "is not aware of any other schemes availed by the Mandatory Respondents." Compare SRF Supp. QR at 14–16, PD 84, bar code 3733852-01 (July 23, 2017); Jindal Poly Second Supp. QR Resp. at 2–3, CD 82, bar code 3735042-01 (July 25, 2018) ("Jindal SQR"); with GOI Sec. II QR Resp. at 96, CD 64, bar code 3661496-01 (Jan. 16, 2018). After indicating that more information was needed with respect to the program, see Prelim. Decision Memo. at 28, Commerce subsequently issued two supplemental questionnaires to the GOI.

However, in response to each, the GOI failed to fully answer Commerce's specific inquiries that pertain to whether the program is de facto specific. See GOI

Court No. 19-00050                                                                                           Page 11

Second Supp. QR at 28–40, CD 97, bar code 3751378-01 (Sept. 5, 2018) ("GOI Second SQR"); GOI Third SQR at 31–41, CD 102, bar code 3758147-01 (Oct. 1, 2018) ("GOI Third SQR"). By statute, Commerce discerns de facto specificity from the presence of one or more factors: (1) whether the actual number of recipients are limited; (2) whether an enterprise or industry is a predominant user of the subsidy; (3) whether an enterprise or industry receives a disproportionally large amount of subsidy; and, (4) whether the authority favored an enterprise or industry in its decision to grant a subsidy. See 19 U.S.C. § 1677(5A)(D)(iii). Commerce asked the GOI to provide the total amount of assistance for each mandatory respondent as well as for all companies, the total number of companies approved for assistance, and the total number of companies that applied for, but were denied, assistance. See GOI Second SQR at 36–37; see also GOI Third SQR at 40–41. The GOI replied that "[t]he details with respect to the mandatory respondents is provided in response to this questionnaire[,]"[6] did not provide any information about third companies, and otherwise maintained that data on the program was not "maintained in a centralized format." GOI Second SQR at 37; GOI Third SQR at 40–41. The GOI's response did not equip Commerce with the information necessary to make a de facto specificity

---

[6] The GOI appears to refer to its response, where it lists the amount of assistance approved to the two mandatory respondents. See GOI Second SQR at 37; GOI Third SQR at 34.

finding. Therefore, Commerce reasonably filled in missing information with facts otherwise available.[7]

Further, Commerce's application of an adverse inference in selecting among facts otherwise available is reasonable, because the GOI did not act to the "best of its ability" when it failed to provide requested information. Repeatedly, Commerce requested that the GOI provide complete responses to its questions pertaining to the Subsection 32AC program. See, e.g., Letter from Commerce Pertaining to GOI 2nd Supp. Questionnaire, PD 99, bar code 3746828-01 (Aug. 22, 2018) ("[P]lease describe . . . assistance in detail, including the amounts, date of receipt, purpose and terms, and answer all questions in the [listed appendices]."); Letter from Commerce Pertaining to GOI 3rd Supp. Questionnaire, PD 118, bar code 3754436-01 (Sept. 17, 2018) ("As previously requested, please provide a full narrative response to [questions

---

[7] Jindal avers that Commerce had the requisite information to make a de facto specificity determination and points to its accounting of the benefits received under the Subsection 32AC program. See Pl.'s Br. at 13–15 (citing Jindal SQR at 2–4, Ex. 105). However, that information submitted by Jindal concerns only its own use of the program. Jindal SQR at 2–4, Ex. 105. To the extent that Jindal describes how the program works, that information relates primarily to a determination of de jure specificity, i.e., the availability of the subsidy to potential users. Id. at 2–4; see also 19 U.S.C. § 1677(5A)(D)(i)–(ii) (A subsidy is specific as a matter of law "[w]here the authority providing the subsidy, or the legislation pursuant to which the authority operates, expressly limits access to the subsidy to an enterprise or industry." A subsidy is not specific as a matter of law if "eligibility is automatic," "the criteria or conditions for eligibility are strictly followed," and "the criteria or conditions are . . . capable of verification.") By contrast, a de facto specificity determination concerns the actual recipients of the subsidy and the amount of support received. See 19 U.S.C. § 1677(5A)(D)(iii). Jindal's own use of the program says nothing about the use of the program by other recipients.

Court No. 19-00050                                                                                             Page 13

about the Subsection 32AC program]."). Commerce also warned that failing to provide the requested information could result in the application of AFA. Id. Despite repeated opportunities, the GOI did not notify Commerce, and explain why, it could not provide information in the form and manner requested.[8] See 19 U.S.C. § 1677m(c). To avoid the risk of an adverse inference, the GOI must "put forth maximum effort to investigate and obtain all requested information." Mukand, Ltd. v. United States, 767 F.3d 1300, 1306 (Fed. Cir. 2014) (citing Nippon Steel, 337 F.3d at 1382). Here, as Commerce reasonably concluded, the GOI failed to act to the best of its ability, warranting the application of an adverse inference.

Given that the GOI, not Jindal, failed to cooperate, Jindal argues that the collateral application of AFA is not warranted and is punitive. See Pl.'s Br. at 16; Pl.'s Reply Br. at 5–6. However, the court cannot say that Commerce's use of AFA to calculate Jindal's CVD rate is unreasonable. It is an unfortunate consequence that a government's failure to cooperate impacts a respondent that had cooperated; therefore, to the extent it is able, Commerce must avoid this collateral effect in making its determination.[9] See Fine Furniture (Shanghai) Ltd. v. United States, 36

---

[8] Eleven months elapsed from the time Commerce first issued the initial questionnaire to the GOI to the deadline for Commerce to respond to the third supplemental questionnaire. See GOI Second SQR; see also GOI Third SQR.

[9] Jindal's contention that Commerce's application of AFA "penalizes" Jindal for the GOI's inaction is misplaced. Commerce applies facts otherwise available, with an adverse inference, to fill in gaps in the record so that it may make a determination

(footnote continued)

Court No. 19-00050                                                                                             Page 13

about the Subsection 32AC program]."). Commerce also warned that failing to provide the requested information could result in the application of AFA. Id. Despite repeated opportunities, the GOI did not notify Commerce, and explain why, it could not provide information in the form and manner requested.[8] See 19 U.S.C. § 1677m(c). To avoid the risk of an adverse inference, the GOI must "put forth maximum effort to investigate and obtain all requested information." Mukand, Ltd. v. United States, 767 F.3d 1300, 1306 (Fed. Cir. 2014) (citing Nippon Steel, 337 F.3d at 1382). Here, as Commerce reasonably concluded, the GOI failed to act to the best of its ability, warranting the application of an adverse inference.

Given that the GOI, not Jindal, failed to cooperate, Jindal argues that the collateral application of AFA is not warranted and is punitive. See Pl.'s Br. at 16; Pl.'s Reply Br. at 5–6. However, the court cannot say that Commerce's use of AFA to calculate Jindal's CVD rate is unreasonable. It is an unfortunate consequence that a government's failure to cooperate impacts a respondent that had cooperated; therefore, to the extent it is able, Commerce must avoid this collateral effect in making its determination.[9] See Fine Furniture (Shanghai) Ltd. v. United States, 36

---

[8] Eleven months elapsed from the time Commerce first issued the initial questionnaire to the GOI to the deadline for Commerce to respond to the third supplemental questionnaire. See GOI Second SQR; see also GOI Third SQR.

[9] Jindal's contention that Commerce's application of AFA "penalizes" Jindal for the GOI's inaction is misplaced. Commerce applies facts otherwise available, with an adverse inference, to fill in gaps in the record so that it may make a determination

(footnote continued)

CIT 1206, 1212 n.10, 865 F. Supp. 2d 1254, 1262, n.10 (2012), aff'd, 748 F.3d 1365 (Fed. Cir. 2014); see, e.g., Guizhou Tyre Co., Ltd. v. United States, 42 CIT __, __, 348 F. Supp. 3d 1261, 1271 (2018) (noting that Commerce could have avoided the collateral application of AFA by verifying alternate information placed on the record by respondents, when the government failed to cooperate). Here, however, the record did not enable Commerce to do so. See Final Decision Memo. at 14, 24–25.

### III. Commerce's Treatment of the PSI Program as a Countervailable Subsidy

Jindal alleges that Commerce erred in law by failing to consider whether an exception to countervailability under 19 U.S.C. § 1677(5B)(C) applies to the PSI program. See Pl.'s Br. at 8–9, 11–13. Jindal further avers that substantial evidence supports a determination that the PSI program was a nonspecific program that provided a subsidy in SGOM, an economically disadvantaged region, within the meaning of subsection (5B)(C). See id. at 10–11. Defendant and Defendant-Intervenors counter that Jindal never raised this argument during the administrative proceeding, and, therefore, failed to exhaust its administrative remedies. See Def.'s Br. at 9–12; see Def.-Intervenors' Br. at 6–7. However, even if Jindal did not waive this argument, Defendant and Defendant-Intervenors contend

---

and encourage, in the future, cooperation of parties and their governments. See F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000); see also Fine Furniture, 865 F. Supp 2d at 1373 (noting that the collateral impact on a respondent may encourage the government to cooperate in future investigations so as to not harm industry).

that Jindal's arguments are premised on a misunderstanding of the statute. See Def.'s Br. at 9, 12–14; Def-Intervenors' Br. at 7. For the reasons that follow, Jindal failed to exhaust its administrative remedies by not raising its arguments concerning section 1677(5B)(C) in the underlying proceeding.

Parties are required to exhaust administrative remedies before the agency by raising all issues in their initial case briefs before Commerce. Dorbest Ltd. v. United States, 604 F.3d 1363, 1375 (Fed. Cir. 2010) (citing to 19 C.F.R. § 351.309(c)(2), (d)(2); Mittal Steel Point Lisas Ltd. v. United States, 548 F.3d 1375, 1383 (Fed. Cir. 2008)); ABB, Inc. v. United States, 920 F.3d 811, 818 (Fed. Cir. 2019). However, the court has discretion not to require exhaustion of administrative remedies where a pure legal question arises. 28 U.S.C. § 2637(d); see also Agro Dutch Indus. Ltd. v. United States, 508 F.3d 1024, 1029 (Fed. Cir. 2007).[10] A pure legal question does not require additional factual development or resort to agency expertise for the court to dispose of this purely legal question. See Consol. Bearings Co. v. United States, 348 F.3d 997, 1003–04 (Fed. Cir. 2003); see also Consol. Bearings Co. v. United States, 25 CIT 546, 553–54, 166 F. Supp. 2d 580, 587 (2001), rev'd on other grounds, 348 F.3d 997

---

[10] This Court has recognized other limited exceptions to the doctrine of exhaustion of administrative remedies such as: "where exhaustion would be 'a useless formality,' intervening legal authority 'might have materially affected the agency's actions,' . . . where 'clearly applicable precedent' should have bound the agency, or where the party 'had no opportunity' to raise the issue before the agency." SeAH Steel Corp. v. United States, 35 CIT 326, 329, 764 F. Supp. 2d 1322, 1325–26 (2011) (citing Jiaxing Brother Fastener Co., Ltd. v. United States, 34 CIT 1455, 1464–65, 751 F. Supp. 2d 1355–56 (2010)).

Court No. 19-00050 Page 16

(Fed. Cir. 2003) (synthesizing from numerous decisions four non-exhaustive requirements for application of the "pure legal question" doctrine: (a) a new argument that is (b) purely legal and (c) does not require agency involvement or fact finding and (d) does not create undue delay) (internal citations omitted).

Here, the doctrine of exhaustion of administrative remedies precludes the court's review of Commerce's decision not to examine the applicability of 19 U.S.C. § 1677(5B)(C) to the PSI program. As Jindal concedes, it did not raise the argument in the administrative proceeding. See Pl.'s Reply Br. at 1–4. Further, none of the exceptions to the doctrine apply. Even though the applicability of section 1677(5B)(C) entails a legal question—of whether or not the PSI program constituted a non-countervailable subsidy—it also requires development of a factual record. See Pl.'s Reply Br. at 2–3. Section 1677(5B)(C) provides that "[a] subsidy provided, pursuant to a general framework of regional development, to a person located in a disadvantaged region within a country shall be treated as noncountervailable, if it is not specific . . . within eligible regions and if [certain] conditions are met[.]" 19 U.S.C. § 1677(5B)(C). By its plain language, the provision's application is conditioned on a subsidy not being specific and on meeting certain conditions. See id. Those are factual determinations that require resolution by Commerce, not a pure legal question that could, at this juncture, invite the court's review. See Consol. Bearings

Co. v. United States, 348 F.3d 997, 1003–04 (Fed. Cir. 2003). Given that Jindal failed to raise this issue to Commerce, the court will not now address that question here.[11]

## IV. Commerce's Determination to Countervail Certain State Tax Incentive Programs

Jindal argues that Commerce erroneously treated Jindal as the recipient of benefits under certain state tax incentive programs rather than its suppliers. See Pl.'s Br. at 17–18. Defendant and Defendant-Intervenors counter that Jindal is precluded from raising this argument, because Jindal failed to raise this issue to Commerce during the administrative proceeding. See Def.'s Br. at 17–19; Def.-Intervenors' Br. at 11. Jindal, again, failed to exhaust its administrative remedies.

Although Jindal contends that Commerce "was on full notice" that its suppliers and sellers, as opposed to Jindal itself, received benefits, Jindal's only discussion of this issue appears in its initial questionnaire response. See Pl.'s Reply Br. at 7 (citing Jindal Poly Questionnaire Resp. at 81–87, Ex. 88, CD 9, 45, barcodes 3660266-01, 3660266-37, Jan. 10, 2018 ("Jindal QR")). However, Jindal's questionnaire response merely explains that, in certain cases, its suppliers did not charge sales tax because

---

[11] Although the court does not reach the issue, Defendant-Intervenors note 19 U.S.C. §1677(5B)(C) expired in 2000, 66 months after the WTO Agreement entered into force in January 1995. Def.-Intervenors' Br. at 7; see also 19 U.S.C. § 1677(5B)(G) ("Subparagraphs (B), (C), (D), and (E) shall not apply on or after the first day of the month that is 66 months after the WTO Agreement enters into force[.]"); AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 105–106, 310 F. Supp. 2d 1347, 1358 (2004). Thus, Defendant-Intervenors argue Commerce had no statutory obligation to analyze the applicability of this provision, which is no longer in force. Def.-Intervenors' Br. at 7.

of an exemption granted to the seller,[12] see Jindal QR at 81–87, and details purchases with the sales tax exemption and the amount of sales tax otherwise due. Id. at 82–87, 88. Given that Jindal neither applied for an exemption itself "nor is aware of the type of program[,]" it concludes that the sales tax exemption "cannot be a benefit enjoyed by Jindal." Id. at 81–82. A conclusory statement, without any further elaboration in the questionnaire response or in any other part of the record or proceeding, does not, as Jindal avers, "set forth this argument in detail[.]" See Pl.'s Reply Br. at 7. Jindal did not contest Commerce's preliminary determination that the sales tax exemption conferred a benefit and its calculation of Jindal's countervailable duty rate under the program, see Prelim. Decision Memo. at 27; see also Jindal Poly Case Br., PD 128, bar code 3765104-01 (Oct. 24, 2018), when it had

---

[12] Jindal invokes Zhaoqing Tifo New Fibre Co., Ltd. v. United States, 39 CIT __, 60 F. Supp. 3d 1328 (2015), to claim that an exception to the doctrine of exhaustion applies because Commerce was fully on notice that Jindal's suppliers, rather than Jindal itself, received benefits from certain sales tax exemption programs. See Pl.'s Reply Br. at 7. However, the facts of Zhaoqing are readily distinguishable. Although the court in Zhaoqing held that the exhaustion doctrine did not apply—with regard to alleged double-counting of certain energy costs in using different financial statements from the preliminary and final determinations—it also considered, arguendo, whether an exception would have applied were the doctrine applicable. Id., 39 CIT at __, 60 F. Supp. 3d at 1350–51. The court explained that Commerce would have had an opportunity to consider the double-counting issue, because the domestic producer had warned Commerce of potential double-counting in connection to the financial statements in its case brief and, further, Commerce itself considered the potential for double-counting at least for some energy inputs in the proceeding. Id., 39 CIT at __, 60 F. Supp. 3d at 1356. Here, Jindal's cursory reference to the alleged recipient of benefits in a questionnaire response is insufficient to put, as Jindal alleges, Commerce on "full notice of [Jindal's] position concerning the sales tax." Pl.'s Reply Br. at 7.

an opportunity to do so.  See 19 C.F.R. § 351.309(c)(2) ("The case brief must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results, including any arguments presented before the date of publication of the preliminary determination or preliminary results.").  Jindal failed to alert Commerce to its position that the state tax incentive programs did not confer benefits, and, therefore, did not exhaust its administrative remedies such that the court will now review Jindal's claim.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Commerce's Final Results is sustained. Judgment will enter accordingly.

 /s/ Claire R. Kelly 
Claire R. Kelly, Judge

Dated: April 22, 2020
New York, New York